UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Conservation Law Foundation, Inc. ) | |
| ) | Case No. 1:16-cv-12568-MLW |
| Plaintiff, ) | |
| v. ) | ~~Proposed~~ Consent Decree |
| ) | |
| J.H. Maxymillian, Inc. and ) | |
| Maxymillian Technologies, Inc. ) | |
| ) | |
| Defendants. ) | |

WHEREAS, Plaintiff Conservation Law Foundation, Inc. ("CLF") filed this action on December 21, 2016, against J.H. Maxymillian, Inc. and Maxymillian Technologies, Inc. (collectively "Maxymillian" or "Defendant"), alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs;

WHEREAS, Maxymillian owns and operates a Crushed and Broken Stone, Including Rip Rap and Cold-Mix Asphalt Encapsulation facility located at 1801 East Street, Pittsfield, MA 01201 (the "Facility");

WHEREAS, CLF has alleged that the Facility discharges stormwater and process wastewater to the East Branch Housatonic River;

WHEREAS, Maxymillian has developed and implemented a Stormwater Pollution Prevention Plan and filed a Notice of Intent to seek coverage under, and received, a 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity for the Facility;

WHEREAS, Maxymillian alleges its 2015 Multi-Sector General Permit for Stormwater Discharges was in place when CLF filed its complaint and CLF disputes those allegations;

WHEREAS, CLF alleges that Maxymillian's Notice of Intent and Stormwater Pollution Prevention Plan should identify five additional stormwater outfall areas at the Facility;

WHEREAS, Maxymillian disputes CLF's characterization of those five additional areas as stormwater outfalls but desires to resolve this dispute by agreement;

WHEREAS, Maxymillian is willing to amend its Notice of Intent and Stormwater

1

Pollution Prevention Plan by filing the appropriate amended documents with the United States Environmental Protection Agency;

WHEREAS, Maxymillian is willing to enclose its pressure washing activities in a permanent roofed structure, enclosed to prevent any discharges of process wastewater;

WHEREAS, CLF is a regional, nonprofit environmental organization;

WHEREAS, CLF has alleged in its complaint (the "Complaint") and in a letter dated October 21, 2016, sent to Maxymillian and others, that Maxymillian has violated and continues to violate Sections 301(a) and 402 of the Federal Water Pollution Control Act ("Clean Water Act," "CWA" or "Act"), 33 U.S.C. §§ 1311(a), 1342; and

WHEREAS, CLF and Maxymillian (collectively, "the Parties" or individually "Party") agree that resolution of this matter without further litigation is in the best interest of the Parties and the public, and that entry of this Decree is the most appropriate means of resolving this action.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Maxymillian of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). An actual, justiciable controversy exists between Plaintiff and Defendant. The requested relief is proper under 28 U.S.C. § 2201, 28 U.S.C. § 2202 and 33 U.S.C. § 1365(a).

2.    Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action occurred at the Facility, located at 1801 East Street, Pittsfield, MA 01201and in the Housatonic Watershed, which are located within this judicial district.

## II.   COMPLIANCE PROGRAM

3.    Defendant shall amend its application for coverage under the National Pollutant Discharge Elimination System ("NPDES") 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity ("2015 MSGP") with respect to the Facility within one year from the date on which this Consent Decree is entered by the Court (the "Effective Date") by amending its Notice of Intent ("NOI") with the United States Environmental Protection Agency ("EPA") in accordance with this Decree and shall send a copy of the amended NOI to CLF within ten days after it is provided to EPA. Defendant's NOI shall either include a URL linking to the online electronic copy of the Facility's amended Stormwater

Pollution Prevention Plan ("SWPPP"), or shall otherwise comply with the alternative option provided by the EPA's new eNOI (in lieu of posting an online SWPPP and URL). Neither the Facility nor the Defendant shall discharge pollutants to waters of the United States from the Facility except in compliance with the Clean Water Act, applicable federal and state statutes, regulations and discharge permits.

4.  Defendant shall comply with the 2015 MSGP at the Facility. Defendant shall amend its written SWPPP according to this Decree and the requirements of Maxymillian's 2015 MSGP by no later than one year from the Effective Date. The MSGP, as it may be updated from time to time, is incorporated into this Consent Decree by reference. Development of the amended SWPPP shall include, at minimum, the following:

   a. Identification and discussion of all outfalls at the Facility, selection and implementation of appropriate control measures for managing pollutants discharged during storm events for each of these sources. While the Parties have agreed upon five additional areas in the rear yard which will be associated with outfalls, it is also agreed that the actual location and number of outfalls associated with these areas may be five, more or less, and that the number and location of outfalls associated with these areas may be modified or consolidated during Defendant's amended SWPPP development so long as the results are based on sound stormwater management practice, properly applied under Defendant's 2015 MSGP.

   b. A description and plan to segregate process wastewater from stormwater discharges by the construction and use of a permanent roofed structure that encloses pressure washing activities and directs all process wastewater from those activities into a closed-loop recycling system, with appropriate disposal of process wastewater when it becomes unsuitable for reuse. This Decree does not preclude Defendant from disposing process water through the municipality's sanitary sewer system, so long as Defendant complies with all federal, state and local requirements for such discharge, including but not limited to pretreatment requirements.

5.  Defendant shall hire a qualified engineering consultant to develop its amended SWPPP. Defendant will include the consultant's recommendations in its amended SWPPP.

6.  Defendant shall provide a copy of its amended SWPPP to CLF for review and comment within one year of the Effective Date.

### III.  MONITORING PROGRAM

7.  Defendant shall monitor and sample its stormwater runoff, pursuant to the rules and requirements of Maxymillian's 2015 MSGP (currently, for pollutants identified in the i t s MSGP for Sectors D and J; i.e. Total Suspended Solids)

8.  Defendant shall also comply with all other inspection and monitoring requirements of the MSGP including, but not limited to, those of Part 3 including, but not limited to, the in-house inspection of control structures and storage areas after rain events.

9.  Defendant may take additional samples of its stormwater discharges. If it does

so, Defendant will send a copy of each such inspection and/or sampling result to CLF no later than ten (10) days after receipt.

10.    During the first year after the Effective Date of this Decree, Defendant shall implement control measures, if any, and/or maintain control measures at the Facility as necessary to meet the benchmark levels for MSGP Sectors D and J (i.e., Total Suspended Solids). If, after the end of twelve months from the Effective Date of this Decree, Defendant's quarterly monitoring result for any parameter exceeds Defendant's 2015 MSGP benchmark levels under Parts 8.D and 8.J, Defendant agrees to pay stipulated additional Supplemental Environmental Project payments as set forth in Paragraph 15 of this Decree. Such stipulated additional Supplemental Environmental Project payments shall be calculated based on the number of monitoring parameters exceeded during a quarterly monitoring event, not on the number of discharge locations where a monitoring parameter is exceeded (i.e., an exceedance of the TSS monitoring parameter at three separate discharge locations sampled during one quarterly monitoring event shall result in one stipulated additional Supplemental Environmental Project payment, rather than three).

11.    During the life of the Decree, CLF, through representatives, may conduct one (1) site inspection at the Facility in the first, third and fifth year after the Effective Date of this Decree. The site inspection shall occur during normal business hours and upon two (2) full business days prior notice including notice to Defendant. During the site inspection, CLF representatives may collect water samples, take photos at the Facility, and otherwise monitor compliance with the MSGP and the Decree. Any such samples shall be split samples with one of the split samples remaining in the possession of Defendant.

12.    During the life of the Decree, Defendant shall copy CLF on all documents related to stormwater quality or Clean Water Act compliance regarding the Facility submitted to the EPA or Mass DEP. Such documents shall be provided to CLF within ten days of being sent to the agencies by Defendant or its consultants.

## IV.    SUPPLEMENTAL ENVIRONMENTAL PROJECT

13.    Within one year of the Effective Date, Defendant shall make Supplemental Environmental Project ("SEP") payments totaling Twenty Seven Thousand Five Hundred Dollars ($27,500) as described in subparagraphs a and b, below, for the environmental protection and restoration of, or other environmental benefit to, the Housatonic Watershed. Defendant shall notify CLF in writing when each SEP payment is made and provide a copy of the check.
   a.  Within one year of the Effective Date, Defendant shall make a payment of Ten Thousand Dollars ($10,000) to the Berkshire Natural Resources Council, for the specific purpose of acquiring lands and/or conservation easements for the environmental protection and restoration of, or other environmental benefit to, the Housatonic River Watershed.
   b.  Within one year of the Effective Date, Defendant shall make a payment of Seventeen Thousand Five Hundred Dollars ($17,500) to the Lenox Land Trust, for the specific purpose of acquiring land and/or conservation easements for the environmental protection and restoration of, or other environmental benefit to, the Housatonic River Watershed.

4

14.     For each missed deadline included in this Decree, excluding missed payment deadlines (discussed in Paragraph 18 below), Defendant shall make an additional SEP payment to the Lenox Land Trust in the amount of five hundred ($500) for the environmental protection and restoration of, or other environmental benefit to, the Housatonic Watershed. Payment of each such additional amount shall be due fourteen (14) days following each missed deadline. Defendant shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. Pursuant to Paragraph 38, below, Defendant shall not be required to make such additional SEP payment for missed deadlines arising from a Force Majeure event.

15.     For each exceedance of an MSGP benchmark as described in Paragraph 10 of the Decree, above, Defendant will make an additional SEP payment to the Lenox Land Trust in the amount of five hundred dollars ($500) for the environmental protection and restoration of, or other environmental benefit to, the Housatonic Watershed. Payment of each such additional amount shall be due fourteen (14) days following the time Defendant is required to report each quarterly benchmark exceedance under the rules and requirements of its 2015MSGP. Provided, however, that no additional SEP payment shall be due for any exceedance of an MSGP benchmark revealed within the first twelve (12) months following the Effective Date.

16.     None of the SEP payments shall be disbursed to CLF.

## V.     LIQUIDATED ATTORNEY FEES AND COSTS

17.     Within one year of the Effective Date, Defendant shall pay to CLF a total sum of Fifty Thousand Dollars ($50,000) as full and complete satisfaction of CLF's claim for attorneys' fees and costs incurred to date in this matter and for reasonable anticipated costs to be incurred in conducting a site inspection, CLF's consultant's review of periodic information provided by Defendant during development of its amended SWPPP, CLF's consultant's review of Defendant's proposed SWPPP amendments, CLF's consultant's review of Defendant's NOI amendment, and other compliance monitoring.

18.     In the event that any payment owed by Defendant under the Decree is not made on or before the due date, Defendant shall be deemed in default of its obligations under this Decree. In addition to a continued requirement to make said payment, Defendant shall pay to CLF interest on the overdue liquidated attorney fees of 18% per annum compounding daily for every day that a payment is late.

## VI.     EFFECT OF DECREE

19.     CLF covenants not to sue, releases and discharges J.H. Maxymillian, Inc. and Maxymillian Technologies, Inc. (and its/their subsidiaries, officers, directors, shareholders, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, past and future attorney's fees, past and future costs, or any other claim or relief (i) relating to, resulting from or alleging noncompliance with the Clean Water Act at the Facility occurring prior to the date the Court enters this Decree; (ii) for any violations that were alleged,

or could have been alleged, in the Complaint; (iii) for the conduct alleged to constitute violations in the CLF letter to Defendant dated October 21, 2016; and (iv) for past violations alleged in any CLF correspondence to Defendant dated prior to the date the Court enters this Decree concerning Defendant's facility and operations. Notwithstanding anything to the contrary contained herein, CLF retains all rights necessary to enforce the terms of this Decree, including by the filing of a lawsuit.

20.    J.H. Maxymillian, Inc. and Maxymillian Technologies, Inc. covenant not to sue, release and discharge CLF (and its subsidiaries, officers, directors, trustees, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with CLF's investigation of and actions regarding Maxymillian which arose prior to the date the Court enters this Decree. Notwithstanding anything to the contrary contained herein, Maxymillian retains all rights under this Decree, including all rights necessary for its enforcement.

21.    Neither this Decree, nor terms thereof, nor performance of the terms thereunder by Defendant shall constitute or be construed as an admission or acknowledgment by Defendant of the factual or legal assertions contained in this Decree or in CLF's Complaint, and Defendant retains the right to controvert in any subsequent proceedings, other than proceedings for the purpose of implementing or enforcing this Decree, the validity of the facts or determinations contained in this Decree or the Complaint. Neither this Decree, nor terms thereof, nor performance of the terms thereunder, shall constitute or be construed as an admission or acknowledgment by Defendant of any liability, or an admission of violation of any law, by Defendant or by its officers, directors, employees, agents, successors, or assigns.

22.    CLF does not, by consent to the Decree, warrant or aver in any manner that Defendant's compliance with this Decree will constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

## VII.    REVIEW AND TERM OF DECREE

23.    The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and the EPA. Therefore, after the signing of this decree by the Parties, the Parties shall jointly inform the Court of the decree, and CLF shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

24.    Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), or upon DOJ's completion of its review process, whichever is sooner, the Parties will jointly move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate upon the following: (1) five years have passed from the Effective Date; and (2) completion of all payment obligations set forth in this Decree. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the

Court to entry of this Decree.

## VIII.   MODIFICATION AND ENFORCEMENT OF DECREE

25.     This Decree may be modified only upon written consent of the Parties and the approval of the Court.

26.     This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.  If the Court does not agree to retain jurisdiction over this matter, then this Consent Decree will remain in full force and effect between the Parties, and any Party may institute a new action in the United States District Court for the District of Massachusetts concerning their respective rights and obligations under this Decree.

## IX.    MISCELLANEOUS PROVISIONS

27.     This Decree shall remain in effect if Defendant relocates the Facility and its activities now conducted under its 2015 MSGP to a different location.

28.     Sections I, IV, V, VII, VIII, and IX of this Decree shall remain in effect if J.H. Maxymillian, Inc. and/or Maxymillian Technologies, Inc. ceases to be the operator of the Facility, regardless of whether the Facility continues to operate or not.

29.     All payments pursuant to this Decree shall be made in form of a check.

30.     Entire Agreement. This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

31.     Notices. Any notice, demand, copies of documents and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and either (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (d) sent by a nationally recognized courier service (i.e., Federal Express) for next-day delivery, to be confirmed in writing by such courier. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given when (a) sent via email, (b) actually received or refused by the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Plaintiff shall be sent to:

Zachary K. Griefen, Esq.
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
zgriefen@clf.org

Notices for Defendant shall be sent to:

Neal Maxymillian, President
Maxymillian Technologies, Inc.
1801 East St.
Pittsfield, MA 01201
nmaxymillian@maxymillian.com

John Lake, Esq.
Maxymillian Technologies, Inc.
1801 East St.
Pittsfield, MA 01201
jlake@maxymillian.com

and

James H. Maxymillian, Chairman
J.H. Maxymillian, Inc.
1801 East St.
Pittsfield, MA 01201
jmaxymillian@maxymillian.com

John Lake, Esq.
J.H. Maxymillian, Inc.
1801 East St.
Pittsfield, MA 01201
jlake@maxymillian.com

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

32. Authorization. Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

33. Successors and Assigns. This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

34. Interpretation. The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

35. Headings. The section and paragraph headings contained in this Decree are for

reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

36. **Counterparts.** Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes. Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Agreement may be signed in counterparts.

37. **Severability.** In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

38. **Force Majeure.** For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of Defendant, including its contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Decree, except for obligations as provided in Paragraphs 13, 17, and 18 of this Decree, notwithstanding Defendant's best efforts to avoid the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided that Defendant complies with the notice requirements of this paragraph. Examples of events which may constitute Force Majeure events include severe weather events, natural disasters, and national, state or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, Defendant's financial difficulty in performing such work and acts or omissions attributable to Defendant's contractors or representatives.

If any event occurs which may delay or prevent the performance of any obligation under this Decree, caused by a Force Majeure event, Defendant shall notify CLF, at the address specified in Paragraph 31 above, within thirty (30) business days after Defendant first knows, or should know, that the event might cause a delay. This written notice to CLF shall include, without limitation: (i) an explanation of the causes of any actual or expected delay or noncompliance; (ii) the anticipated duration of delay; (iii) the measures taken and to be taken by Defendant to prevent or minimize the delay or nonperformance; (iv) a proposed schedule for the implementation of such measures; and (v) a statement as to whether in the opinion of Defendant the Facility can continue to operate in a manner which will not violate this Decree.

If a delay or anticipated delay in performance is attributable to Force Majeure, the time for performance of the obligations under this Decree that are affected by the Force Majeure event shall be extended for the period of time reasonably necessary to allow performance of the obligation to the extent the delay was caused by a Force Majeure event.

**CONSERVATION LAW FOUNDATION, INC.**

By: _____   Date: 5/1/17

Christopher M. Kilian, Vice President
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602


**MAXYMILLIAN TECHNOLOGIES, INC.**

By: _____   Date: 5/1/2017

James H. Maxymillian, Chairman
Maxymillian Technologies, Inc.
1801 East Street
Pittsfield, MA 01201


**J.H. MAXYMILLIAN, INC.**

By: _____   Date: 5/1/2017

James H. Maxymillian, Chairman
J.H. Maxymillian, Inc.
1801 East Street
Pittsfield, MA 01201


ENTERED and DATED this 2nd day of Nov, 2017

_____

Honorable MARK L. WOLF
United States District Judge

10